UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------x
ELIOT FRED BLOOM,

                              Plaintiff,

                                                    Docket No: 19-cv-7115

           -against-

NEW YORK STATE UNIFIED COURT SYSTEM; NEW       **CIVIL RIGHTS COMPLAINT**
YORK STATE APPELLATE DIVISION, SECOND
DEPARTMENT; NEW YORK STATE GRIEVANCE
COMMITTEE FOR THE NINTH AND TENTH JUDICIAL
DISTRICTS; JANET DIFIORE, in her official capacity as
Chief Judge of the State of New York and Chief Judicial
Officer of the Unified Court System; CATHERINE
SHERIDAN, as Staff Counsel to the NEW YORK STATE
GRIEVANCE COMMITTEE FOR THE NINTH AND TENTH
JUDICIAL DISTRICTS; MICHAEL FUCHS, individually
and as Staff Counsel to the NEW YORK STATE
GRIEVANCE COMMITTEE FOR THE NINTH AND TENTH
JUDICIAL DISTRICTS; APRILANNE AGOSTINO, as
Chief Clerk of the NEW YORK STATE APPELLATE
DIVISION, SECOND DEPARTMENT; RANDALL ENG,
as Presiding Judge of the NEW YORK STATE
APPELLATE DIVISION, SECOND DEPARTMENT,

                                 Defendants.
-----------------------------------------------------------------------x

  Plaintiff, ELIOT FRED BLOOM, by his attorney, Raymond Negron, Esq., files this Complaint
and alleges as follows:

1.     This action seeks damages against the Defendants for violating Plaintiff's civil and
constitutional rights for their actions in extending the suspension period of the Plaintiff beyond
the period established previously; making and using hidden and secret rules; making decisions
based on behind the scenes conversations and opinions; due to their intentional acts of
retaliation, abuse of authority and other damaging intentional and negligent acts.

2.     In her annual State of Our Judiciary announcement for 2018, New York's Chief Judge,
Janet DiFiore, announced the priorities of the New York court system and the reforms she
believed to be most important, her system wide campaign to promote efficient court operations,
and to fairly and promptly adjudicate every case that comes before the New York State Courts.

She went on to announce that the court system is making "…real progress to improve promptness and productivity and the overall quality of justice in every corner of the State… More broadly, we are poised to introduce important systemic reforms to make our entire court system fairer, more efficient and more accessible."

3.     The Chief Judge is required by § 249 of the New York Judiciary Law to establish a system of "internal control" for the New York Courts, defined as "a process that integrates the activities, plans … systems, resources and efforts … and that is designed to provide reasonable assurance that the organization will achieve its objectives and mission. The objectives of an internal control system include … promoting the effectiveness and efficiency of operations."

4.     This cry for improvement of the court system and enhancing fairness in New York is not new. In its Final Report to Chief Judge Jonathan Lippman in 2015, the New York State Commission on Statewide Attorney Discipline stated that:

> The "justice delayed is justice denied" adage is certainly applicable to attorney disciplinary matters, for both the lawyer and client. Discipline often occurs years after the underlying event, sometimes as many as three or four (or even more) years. The courts then purport to calibrate the length of suspension to the need to protect the public prospectively for misconduct that occurred long ago. It might seem that in reality, the suspension is not meant to protect the public at all, since so much time has elapsed, but serves a different purpose: punishment or general deterrence – i.e., as a warning to all lawyers. The issue of delay and its relationship to the purpose of discipline is less acute if suspension is ordered closer in time to the violation, but the question persists even if the time lapse can be reduced to a year or two. Prolonged delay also hurts lawyers who live with uncertainty during the delay and who may be harmed when renewing malpractice insurance policies or seeking to change firms. Inordinate delays between allegation and resolution, seriously interferes with the accused's liberty and disrupts his employment, drains his financial resources, curtail his associations, subjects him to public obloquy, and create anxiety in him, his family and his friends."

5.     "Justice delayed is justice denied" is a legal maxim meaning that if legal redress is available for a party that has suffered some injury, but is not forthcoming in a timely fashion, it is effectively the same as having no redress at all. The phrase is used when the party in question lacks political favor, or is viewed as an adversary as in the present case. Delay in the instant

matter is based on retaliation and is a violation of the due process rights of the Plaintiff. Every person has a constitutional right to be heard before being condemned. The Plaintiff herein was suspended for a period of six months, which has now turned into three years. The Plaintiff's six-month suspension period was based on a conflict in one case that had occurred ten years before the suspension period. There is no statute of limitations period contained in the limited available rules of the Defendant Appellate Division and as authorized by Chief Judge DiFiore.

6.      The Defendant Appellate Division has developed a backlog that has been the subject of litigation. This backlog affects court matters as well as attorney discipline matters. This backlog violates the constitutional rights of litigants. As the Supreme Court has ruled, "The Family Court's routine violation of its own rule prevents custodial parents, commonly mothers, from being able to provide for their children. This harms families, including the vulnerable children who are the voiceless victims. It also undermines the integrity of the justice system in the New York City Family Court. In a different context, the courts in New York State have clearly criticized this long-standing and problematic practice: We cannot overlook the dissatisfaction voiced by so many with a system which allows [child support] matters to drag on for long periods of time, thereby affecting the lives of children and the ability of individuals to get on with their lives freed from the litigation which has brought them so much unhappiness and trauma."

7.      Cases are not delayed just due to case backlogs. They are also delayed for reasons that do not appear on the record. Plaintiff alleges in this Complaint that the Defendants delayed Plaintiff's matter by intentionally transferring his matters to the Defendant Grievance Committee, without legal basis and in retaliation for Plaintiff's complaint directed at Defendant Michael Fuchs, and Plaintiff's complaints to and about the Defendants.

8.      This is an action to recover damages caused by the Defendants who individually, and in concert with each other, acted maliciously in retaliation against the Plaintiff. This action does not seek a review of the actions of the Defendants; rather, this is an action for damages based on the illegal and unauthorized actions of the Defendants that continue to cause significant financial damage to the Plaintiff, including a loss of business, loss of income and consequential and incidental damages. Additionally, this action seeks punitive damages due to the intentional acts of the Defendants, including damages for pendent State claims.

## THEORY OF THE CASE

9.     The New York State Attorney Grievance laws, rules, statutes and regulations are hidden
from the public, and in particular, attorneys who are subject to the grievance process. Some rules
are available, but those rules are subject to interpretation by the Defendants Appellate Division
and Grievance Committee based on their particular need. In essence, the rules that are available
are so vague that an attorney subjected to punishment and sanction by the Defendants is unable
to provide a proper defense. The Defendant Appellate Division deliberately seals cases so that
interpretations of the limited rules that are available can be utilized by the Defendant Grievance
Committee, but not by the prosecuted attorney. The rules are so vague that the only interpretation
of those rules is contained in private attorney summaries, and not by the court, as a reference for
grievance practitioners. Rules are made up as the grievance process moves on, so that the
prosecuted attorney cannot prepare for the modified or secret rules that contain no support nor
interpretation. This process allows the Defendants to intentionally violate the due process and
constitutional rights of respondents, such as the Plaintiff herein.

10.     This action seeks damages for the civil and constitutional wrongs against Plaintiff by the
Defendants and as authorized by the Fourteenth Amendment to the Constitution of the United
States for a deprivation of Plaintiff's property, and for violating due process of law. Plaintiff
claims that the Defendants herein commit acts against him in violation of the law and the
Constitution and that the municipal employees are liable for those acts. Further, Plaintiff alleges
that the Defendants lacked proper supervision, and failed to follow proper procedures, in their
violation of limited rules and laws that apply herein and that Judge DiFiore is responsible for the
actions in that regard. The intent of the Defendants was, and is, to use their government positions
illegally and wrongfully to cause the loss of Plaintiff's business and to manipulate the system
that licenses Plaintiff so that Plaintiff has been unable to exercise his civil and constitutional
rights to operate his business, to exercise his liberty interests and to remain free from illegal
government and individual actions that are protected by the New York State and United States
Constitutions. The Defendant's actions include agreements to intentionally interfere with the
Plaintiff's business interests, actions that were motivated by the retaliatory intentions of the
Defendants due to the filing of a grievance by the Plaintiff against Defendant Fuchs, an attorney
employed by the Defendant New York State Grievance Committee, and for other reasons.
Subsequently, the Defendants agreed that they could use their powers to hide motions, utilize
secret and hidden rules and other methods to damage the Plaintiff.

11.     A lawyer subject to discipline is entitled to procedural due process, including notice and an opportunity to be heard; yet the Defendants in this case have manipulated and secreted laws and rules to deprive the Plaintiff of due process. The Defendants have, and continue to, deliberately deprive the Plaintiff of the ability to defend himself, and his licensing and business interests, during the course of a grievance process against the Plaintiff. The Defendants utilized, and continue to utilize, rules and procedures that are only known to the Defendants, employees of the Defendant Appellate Division and employees of the Defendant Grievance Committee. These are rules that are not available anywhere, except to those employed by the Defendants. These are rules that are modified, implemented, supplemented and interpreted in secret, and the modifications, implementations, supplementations and interpretations are kept hidden from respondents, the public, litigants and generally any person interested in the rules and procedures.

12.     These hidden and secret rules are deliberately hidden and secreted, causing an injustice that permits the Defendants to leave respondents such as the Plaintiff defenseless, subject to being tried and judged without the benefit of knowing the rules under which punishment is determined and judged. Requiring Plaintiff to defend himself against the Defendants, without the ability to be apprised of the rules, regulations and laws that apply to his case, is the same as having him face a Star Chamber. As the U.S. Supreme Court described it:

> The Star Chamber has, for centuries, symbolized disregard of basic
> individual rights. The process used by the Defendants is also similar
> to the McCarthy hearings, "where the sense of decency" for examined
> by government conduct that failed to include evidence more than
> speculation and anger toward the accused.

13.     The New York Constitution, Article I, § 6 guarantees a civil litigant the right to appear at trial and confront witnesses. Specifically, the New York State Constitution provides that the party accused shall be allowed to appear and defend matters in person and with counsel, shall be informed of the nature and cause of the accusation, and shall be confronted with the witnesses against him or her. Since a liberty interest is at stake, constitutional protections of due process attach. The proof in this case will establish that the Plaintiff was denied of the most basic and common due process rights in his grievance process and that the deprivation of those rights continues to this day and have caused significant damage to the Plaintiff.

14.     The within history of retaliation and other instances addressed in this complaint illustrates how Plaintiff's reinstatement has been blatantly disregarded and denied by the Court system and

the Defendants herein. Not only has the Court system failed to comply with their own rules; they have persistently and serially violated both State and Federal rules and laws in an arbitrary manner, without regard to Plaintiff's civil and constitutional rights. The attorney discipline system that is applicable to the Plaintiff in this matter is a quasi-criminal matter and thus retaliation, secret rules, a lack of available rules and other deprivations that have occurred in this matter establish cognizable causes of action for damages.

## PARTIES

15.     The Defendant Unified Court System is an agency in the State of New York. ("Court System")

16.     The Defendant New York State Appellate Division, Second Department, is a division and agent of the New York State Unified Court System and is an agency of the State of New York. ("Appellate Division")

17.     The Defendant New York State Grievance Committee for the Tenth and Eleventh Judicial Districts is an agent of the Defendant New York State Appellate Division, Second Department. ("Grievance Committee")

18.     Defendant Janet DiFiore is the Chief Judge of the New York State Court of Appeals, Chief Judicial Officer of the New York Courts, and Chair of the Administrative Board of the New York Courts with offices at 25 Beaver Street, New York, New York. The Chief Judge is responsible for the establishment and enforcement of the administrative policies of the New York Courts. ("Judge DiFiore") Judge DiFiore is responsible for constitutional violations of the Defendant employees due to inadequate training, supervision and procedures.

19.     Defendant Aprilane Agostino ("Agostino") is an individual residing in the State of New York. Defendant Aprilane Agostino was at all times herein the Chief Clerk of the Defendant Appellate Division, Second Department.

20.     Defendant Michael Fuchs ("Fuchs") is an individual residing in the County of Suffolk, State of New York.

21.     Defendant Fuchs was at all times herein a staff attorney employed by the Defendant New York State Grievance Committee with an office at Motor Parkway, Hauppauge, New York, County of Suffolk.

22.     Defendant Catherine Sheridan ("Sheridan") was at all times herein a staff attorney employed by the Defendant New York State Grievance Committee with an office at Motor Parkway, Hauppauge, New York, County of Suffolk.

23.     Defendant Randall Eng ("Eng") was a New York State Supreme Court Justice elected to office in the County of Queens, State of New York and served as the Presiding Justice of the Defendant Appellate Division, Second Department, at all times during the acts alleged in this complaint.

## JURISDICTION

24.     This Court has original jurisdiction pursuant to 42 U.S.C. § 1983 which authorizes claims against government officials in their individual capacity based upon the continuing violations of Plaintiffs' rights under the Fourth, Fifth and Fourteenth Amendments to the United States Constitution for compensatory and punitive damages.

25.     Plaintiffs' claims arise under the Constitution and laws of the United States. This Court has jurisdiction over these claims under 28 U.S.C. §§ 1331, 1343(a)(3).

26.     Plaintiff served Defendants with the New York State notice requirement pursuant to section 50-H of the New York General Municipal Law by serving a Notice of Claim upon the Defendants on March 26, 2019. Defendants chose not to conduct a hearing pursuant to section 50-H of the New York General Municipal Law.

27.     Supplemental jurisdiction over Plaintiffs' state law claims is pursuant to 28 U.S.C. §1367.

28.     Venue is proper in the Eastern District of New York under 28 U.S.C. § 1391(e). All of the events and omissions by Defendants giving rise to this action occurred in this judicial district.

## THE CLAIM

29.     The acts alleged herein cluster around agreements and conspiracies between the Defendants, employed by the New York State Grievance Committee for the Ninth and Tenth

Judicial District, and the New York State Appellate Division for the Second Judicial Department. The acts allege include agreements to cause the demise of the Plaintiff's law practice through the wrongful and illegal extension of the Plaintiff's period of suspension, the wrongful and unauthorized delegation of the rights and obligations of the Defendant Appellate Division to the Defendant Grievance Committee, the intentional delay of the reinstatement of Plaintiff, the intentional misplacing of the Plaintiff's application for reinstatement, the hiding of rules, regulations and laws that apply and control Plaintiff's matter and other illegal acts in which the Defendants caused damages by engaging in illegal, unauthorized and unlawful acts. These acts also include the exchange of correspondence in furtherance of a conspiracy, the use of hidden and secret laws, rules and regulations and retaliation against the Plaintiff based in part on his complaint against Defendant Fuchs who was employed by the Defendant Grievance Committee. That complaint was related to Defendant Fuchs' intentional violation of the New York Civil Practice Laws and Rules, and ethics rules.  The conspiracy was also based on Plaintiff's letters to the Defendants seeking a timely and required determination of the Plaintiff's reinstatement.

30.     The primary objective of the Defendant's conspiracy and individual acts has been to inflict severe and sustained economic hardship upon Plaintiff, with the intent of impairing, obstructing and preventing Plaintiff from performing and conducting his business, and his personal interests, as an attorney admitted to practice law in the State of New York. The proof will establish that the Defendants engaged in conduct as part of a conspiracy to retaliate against Plaintiff, violate his constitutional and civil rights and cause him damage.

31.     Both the Fourteenth Amendment and the New York Constitution prohibit state actors from depriving an individual of liberty without due process of law. Included within this protection are the rights to notice and fundamental fairness in the processes utilized by state actors when the state deprives an individual of fundamental liberty interests.

32.     The proof will establish a pattern of conspiratorial activities that are part of the Defendants ongoing and regular way of doing business, activities that include fraud, obstruction of law and violations of the United States and New York Constitutions.

33.     The Fourteenth Amendment to United States Constitution and the New York State Constitution protect fundamental liberty interests against certain governmental intrusions to prevent state actors from employing their power in an abusive or oppressive manner.

34.     The Plaintiff seeks recovery of actual, consequential and punitive damages at three times the amount of actual damages, including reasonable attorney fees, pursuant to 18 U.S.C. § 1964.

## PROCEDURAL HISTORY

35.     In early 2016, Plaintiff filed a complaint against Defendant Fuchs, a staff attorney with the Defendant Grievance Committee, Tenth Judicial District. ("Fuchs Complaint") That complaint was based on Defendant Fuchs' actions in misleading a Referee appointed by the Defendant Appellate Division, and offering documents into evidence as proof against Plaintiff that were obtained from a source other than where Defendant Fuchs swore they were from. These actions by Defendant Fuchs occurred on more than one occasion and Defendant Fuchs' actions each time were deliberate and wrongful.

36.     Subsequent to Plaintiff's filing of the Fuchs Complaint, retaliation ensued against Plaintiff by the Defendants Grievance Committee, Sheridan, Fuchs, Appellate Division and Agostino.

## THE WENGER COMPLAINT

37.     Louis Wenger ("Wenger") was a long-term client of Plaintiffs. Wenger sought counsel and advice from Plaintiff on a wide variety of matters, both business and personal.

38.     Plaintiff represented Wenger in a complex commercial claim, and subsequently a trial, in the Supreme Court, Suffolk County for several years prior to 2014. After the trial, Wenger's daughter, who was a resident of California and who was not involved in nor present for the trial, filed on behalf of her father Louis Wenger a complaint with the Defendant Grievance Committee against the Plaintiff.  Pursuant to the limited rules that are available for the Defendant Grievance Committee, a complainant is defined as a person or entity that submits a complaint to a committee. 22 NYCRR1240.2(e)

39.     The Wenger complaint was referred to the Nassau County Bar Association by the Defendant Grievance Committee for "investigation and appropriate action." After investigating the Wenger Complaint and voluminous facts and evidence provided to the Nassau County Bar Association for their investigation, the Bar Association decided the Wenger Complaint and issued a determination that the Wenger Complaint be dismissed with a letter of advisement, stating that "In the future, the better practice would be to communicate timely with a client and

respond to all inquiries by a client regarding the status of a case." Notwithstanding that determination and letter, the Defendant Grievance Committee and Defendant Sheridan continued to prosecute the Wenger matter although the rules did not allow for a continued prosecution of the complaint.

40.     The acts of the Defendants continuing a prosecution of the Wenger Complaint after it was dismissed by the Bar Association was with the intent to delay the matter, damage the Plaintiff, and to retaliate against the Plaintiff.

41.     The rules that apply to attorney grievances are either non-existent or are secret and hidden by the Defendants. The best and only resource for respondent attorneys and their counsel to interpret the rules is for respondents to obtain and follow a privately authored publication, Ethics-2014, Understanding the Grievance Process, by Barry M. Smolowitz, a member of the Grievance Committee for the 10th Judicial District. (the "Smolowitz Publication"). That publication states:

> …there are intake options that govern the actions of the Grievance Committee for a filed complaint, that the matter to be transferred to another agency such as the local Bar Association Grievance Committee, mediation, fee dispute resolution committee (part 137), bar association fee conciliation committee. These entities can refer the matter back to the Grievance Committee. In addition, the local Bar Association may dismiss, dismiss with advisement or refer the complaint back to the Judicial Grievance Committee for further action.

42.     The resolution chosen by the Bar Association for the Wenger Complaint was to dismiss the complaint with advisement and not to refer it back to the Defendant Grievance Committee. However, notwithstanding the dismissal, the Defendant Grievance Committee was determined to pursue the Wenger Complaint against Plaintiff. In September 2106, Defendants Sheridan, Fuchs and Grievance Committee re-opened the Wenger Complaint notwithstanding the Bar Association's dismissal of the Wenger Complaint and the rules that required it to be dismissed.

43.     The Defendant Grievance Committee subsequently and deliberately delayed the resolution of the Wenger Complaint for years. In March 2016, Plaintiff received a letter from Defendant Sheridan advising "the Committee has determined to hold the Wenger matter in abeyance." In response, Plaintiff sent multiple letters to Defendants Sheridan and Grievance

Committee stating his concerns that the delay was deliberate and that Plaintiff sought a timely resolution. Plaintiff also sent a letter in October 2016 demanding that the office of Defendant Grievance Committee be recused from further delay or consideration of the Wenger Complaint.

44.     Subsequently, Plaintiff sent multiple letters to Defendants Agostino, Eng and Appellate Division addressing his concerns with the slow process and seeking a timely resolution. Plaintiff also sent a letter in October 2016 demanding that the Defendant Appellate Division transfer Plaintiff's matter to another Department.

45.     The acts of the Defendants related to the Wenger Complaint were designed to intentionally cause prejudice and damage to Plaintiff by delaying a resolution of the Wenger Complaint so that Wenger would be unable to testify due to his age, medical and mental condition and so that the Wenger Complaint would permit the Defendants to delay indefinitely Plaintiff's readmission to the Bar. By this time, Wenger was already over age 90 and his health was failing. Plaintiff had identified Wenger as his witness for a hearing. Ultimately Wenger passed away prior to the actual hearing took place. Defendants Sheridan, Fuchs and Grievance Committee deliberately delayed hearings and testimony so that Wenger's medical condition would deteriorate and he would be unavailable at trial for examination by Plaintiff and so that Plaintiff would be unable to practice law for a longer period of time.

46.     Subsequently, the Defendants Agostino, Eng and Appellate Division delayed a determination of Plaintiff's reinstatement matter. Plaintiff's motion for reinstatement was never calendared on the return date pursuant to court rules and was "lost" by Defendants Agostino and Appellate Division. Plaintiff sent a letter to Judge DiFiore complaining about the "lost" motion and asked her to intervene and require that the Defendants Appellate Division and Agostino calendar Plaintiff's reinstatement motion.

47.     Plaintiff also complained that he was not permitted to obtain a transcript of his testimony under oath in the Wenger Complaint, although he was permitted to obtain his transcript in a prior proceeding. This denial was due to a new and secret rule developed by the Defendants that did not really exist, was secret, or was another hidden and was an unwritten rule of the Defendants.

48.     Plaintiff sent numerous letters to the Defendants Agostino, Eng and Appellate Division seeking a resolution of his matters, as the rules that applied required an expedited resolution. Plaintiff sought to be reinstated pursuant to the rules so that he could resume his business.

49.     Plaintiff also stated in the letters he sent that the Defendants were not following the limited, yet available rules that applied to the Wenger Complaint. Plaintiff also raised the issue that the complainant in the Wenger matter was not Plaintiff's former client Wenger himself, but that it was Wenger's daughter who was never present during the Plaintiff's representation of the client. Plaintiff further stated his concern that due to the lengthy delay by the Defendants Sheridan, Fuchs and Grievance Committee related to the Wenger Complaint, Wenger had deceased and that the Defendants had never advised Plaintiff of Wenger's declining health and that Wenger would be unavailable to give testimony on behalf of Plaintiff.

50.     The Defendants took no action based on Plaintiff's letters and concerns and instead retaliated against Plaintiff for his letters, concerns and complaints. The Defendants have been permitted to retaliate against Plaintiff for years and to date Plaintiff's initial six -month suspension has been extended by the Defendants to three years.

## THE LOST MOTION

51.     Plaintiff submitted a proper motion for reinstatement to the Defendants Agostino and Appellate Division in October 2017. However, that motion was "lost" by the Defendants Agostino and Appellate Division. Plaintiff was able to locate the Federal Express delivery receipt for the motion, which contained his motion papers and cover letter. That delivery receipt showed that the motion was delivered to the Defendant Appellate Division on October 18, 2017. Additionally, on October 17, 2017, the Defendants Sheridan and Grievance submitted their papers to the Defendant Appellate Division, relying on the return date identified in the motion by Plaintiff.

52.     Plaintiff sent a letter to Judge DiFiore advising her that the motion was lost by the Defendants Agostino and Appellate Division:

> I previously wrote to you on January 13, 2018, and addressed my concerns about retaliation by the Second Department. I submitted to you as evidence of this that the Court had not even decided a motion I submitted returnable October 27, 2017, for reconsideration.
> I was able to locate the Federal Express delivery receipt for the motion, which contained my motion papers and my cover letter on October 17, 2017. (enclosed) As you can see it was delivered to the Appellate Division on October 18, 2017. Additionally, on October 17, 2017, the Grievance Committee staff

attorney assigned to this matter submitted an affirmation in
opposition to the Appellate Division.

It is now January 23, 2018, and the motion is nowhere to
be found. No decision; no calendar date; no record. In four days it
will be 90 days since the submission date. Are there standards and
goals that apply here? Is my inability to support my family any
factor at all?

53.    Judge DiFiore forwarded Plaintiff's letter to the Defendant Appellate Division but she

failed to direct the Defendant Appellate Division to act on the matter and follow the law. Instead,

Judge DiFiore claimed that she had no authority over the matter.

### UNAUTHORIZED ACTION BY THE APPELLATE DIVISION

54.    Knowing that Plaintiff's reinstatement motion would be further delayed indefinitely, and

rather than make a determination on Plaintiff's motion for reinstatement, the Defendants

Agostino, Eng and Appellate Division issued an order holding the decision in abeyance and

referring the matter to the Defendant Grievance Committee. There is no legal authority for

holding a decision in abeyance. There is no legal authority for referring the matter to the

Defendant Grievance Committee. This act was in retaliation for Plaintiff letters, concerns and

complaints.

55.    The rules governing the readmission of an attorney are set forth under the provisions of

*section 691.11 of the Rules of the Court, 22 NYCRR 691.11, and section 1240 of the Rules for*

*Attorney Discipline*. The Defendants Agostino, Eng and Appellate Division violated Plaintiff's

due process rights by delegating its authority to the Defendant Grievance Committee.

56.    New York Judiciary Law Section 691.11 states:

Reinstatement following suspension, disbarment, or striking of name
from roll of attorneys. 1…An attorney suspended under the provisions of
this Part shall be entitled to apply for reinstatement after such an interval
as this court may direct in the order of suspension or any modification
thereof. In case of suspension only, the order may limit the command to
the period of time within which such suspension shall continue, and if
justice so requires may further limit the scope thereof.

57.    The rules require that the Court shall refer an applicant for reinstatement after a

suspension of more than one year or after a disbarment to a Committee on Character and Fitness

in this judicial department or to a referee, justice, or judge for a report before granting that

application and, in its discretion, may similarly refer an application for reinstatement after a suspension of one year or less. The Plaintiff's suspension was for six months, not for more than a year, and thus that option did not apply.

58.     The choices available to the Defendant Appellate Division for deciding the motion did not include their course of action, to wit, to hold the application for reinstatement in abeyance. The Defendants were required to reinstate Plaintiff or, in the interests of justice, limit the scope of Plaintiff reinstatement. The Defendant Appellate Division could have referred Plaintiff's matter to the Character and Fitness Committee if there was any question about his ability to practice law, but they chose not to because there was no issue regarding his fitness to practice.

59.     The form of Plaintiff's application for reinstatement was in the proper form and there was no suggestion otherwise. Thus, pursuant to Judiciary Law 691.11, the Plaintiff's application for reinstatement was required to have been granted by the Court.

60.     Instead of following the rules, the Defendant Grievance Committee referred the matter to the Defendant Grievance Committee although there was no authority vested with the Defendant Grievance Committee that permits that body to decide on when Plaintiff's reinstatement would be effective.  The Grievance Committee is vested with the authority to investigate, but not determine the period of suspension pursuant to Judiciary Law 691.4.

61.     The Defendant Appellate Division wrongfully, yet intentionally, placed Plaintiff under the complete control of the Defendants Sheridan, Fuchs and Grievance Committee, who then acted adversely to the Plaintiff, with no legal authority and with a reason to delay his reinstatement application due to his complaints. By referring Plaintiff's matter to the Defendants Sheridan, Fuchs and Grievance Committee, the Defendants Agostino, Eng and Appellate Division gave the Defendants Sheridan, Fuchs and Grievance Committee carte blanche to delay Plaintiff's reinstatement for as long as they chose, continuing to the present. The Defendants Agostino, Eng and Appellate Division have in affect substituted the Defendants Sheridan, Fuchs and Grievance Committee as Plaintiff's judges and put his fate in their hands.

62.     The Defendants Agostino, Eng and Appellate Division conspired with the Defendants Sheridan, Fuchs and Grievance Committee and with each other to delay a decision on so that the order of the Defendant Appellate Division holding reinstatement in abeyance would be delayed

for years. The Defendants violated available and existing rules of procedure by continuing the six-month definite period of suspension of Plaintiff's license for over three years.

63.    Based on the actions of the Defendants as aforesaid, Plaintiff has not been able to provide for his family; his clients have taken their cases and left; and his reputation has been forever damaged. The suspension order suspended Plaintiff for six months, but due to the intentional acts of the Defendants, the suspension continues to the date of the filing of this Complaint.

64.    Electronically stored information ("ESI") will establish that the Defendants engaged in conversations with each other regarding Plaintiff's matters.

### THE TRANSCRIPTS

65.    In January 2017, Plaintiff sent a letter to Defendant Sheridan seeking to obtain a copy of his examination under oath at his own expense so that he could review the transcript. Plaintiff made this request because Defendant Fuchs had previously advised Plaintiff "the Appellate Division was changing the rules regarding a litigant's ability to obtain their own transcript."

66.    Defendant Sheridan responded advising that Plaintiff was not permitted to review or obtain his own transcript.  Plaintiff responded asking for Defendant Sheridan to direct Plaintiff to the exact citation and location of the rule relied upon by Defendant Sheridan in denying his request. Defendant Sheridan responded that the examination under oath is an investigatory device of the Committee, which is authorized by 22NYCRR1240.7(b) and (c) and that if Plaintiff required any further explanation, he should direct his questions to Defendant Agostino.

67.    In February 2017 Plaintiff, pursuant to Defendant Sheridan's suggestion, sent a letter to Defendant Agostino requesting the production of the transcript or the citation and location of the rule relied upon by Defendant Sheridan in denying his request.  In reply, Defendant Agostino denied Plaintiff's requests.

68.    NYCRR1240.7(b) and (c) does not address the request Plaintiff made for his transcript and the denial by the Defendants of that request.

69.    In denying Plaintiff's requests, the Defendants retaliated against Plaintiff by refusing to permit Plaintiff to obtain the transcript of his examination under oath and falsely claiming that rules existed that prevented Plaintiff from obtaining the transcript.  Either such a rule did exist,

that was secret and not available to litigants or to the public, or the Defendants made false statements in their written responses to Plaintiff.

## FAIR HEARING

70.     Plaintiff was not permitted to present live witness testimony from fact and character witnesses at the Wenger hearing, witnesses that included judges and others who knew the Plaintiff professionally and personally. This occurred because the Defendants do not follow rules, because there are no rules, and yet other hearings for other respondents have permitted live testimony. Further, Plaintiff was not permitted to present lie detector results although the limited and secret rules of the Defendants do not prevent such proof.

71.     Due process requires an opportunity to confront and cross-examine adverse witnesses. Taking steps to avoid witnesses from appearing to give live testimony at the hearing, through a lack of rules regarding personal appearances of judges, and threatening judges identified by the Plaintiff, and by failing to establish procedural rules violate Plaintiff's due process procedural rights.

72.     While the Plaintiff was afforded a hearing in his matter, the hearing was not a fair process. Plaintiff alleges that he was damaged, and that his constitutional rights were violated by the Defendants failure to provide him the opportunity to be heard with witnesses and provide Plaintiff with the right to be heard in a meaningful manner. Plaintiff further contends that since he was not provided the rules that applied to the process and the hearing, the Defendants denied his constitutional right to due process.

## REQUEST FOR RECUSAL

73.     Plaintiff was the attorney for a party in a civil matter that was tried in the Nassau County Supreme Court.  Prior to the non-jury trial commencing on one of the trial days, Defendants, adverse parties in that matter, were invited into the chambers of a Supreme Court Judge and the trial judge became aware that they were in that Judge's chambers and that they were friends with that Judge, when he took the bench to continue the trial. Subsequently, Plaintiff's client in that case filed a complaint with the New York State Commission on Judicial Conduct against that Judge.  Plaintiff was not part of the complaint nor did he assist in its preparation or filing.

Subsequently Plaintiff was advised that the Judge against whom the complaint was filed was blaming him for the complaint.

74.     For years Plaintiff represented the Fraternal Order of Police, New York Chapter. While appearing for that organization in the Supreme Court, Nassau County, Plaintiff, the President of the Fraternal Order of Police ("FOP") and the Chairman of the Nassau County Independence Party, passed by that same Judge's courtroom as they were exiting the Courthouse. The FOP President decided to enter the Judge's courtroom to say hello. As it turned out, the Judge was proceeding with a jury trial, and he admonished the FOP President for waiving to him while he was on the bench. Subsequently, the Judge blamed Plaintiff for the actions of the FOP President.

75.     Due to these occurrences, and a conversation that took place between that Judge and Plaintiff at a political function, and due to the delays that were occurring in Plaintiff's delayed reinstatement, Plaintiff sent a letter to the Defendant Appellate Division asking that the Court recuse itself from his case. Defendants Agostino and Eng rejected that letter.

### EQUAL TREATMENT

76.     Because there are no rules to follow, the Defendant Appellate Division overlooks grievance proceedings against some attorneys and targets others. Time after time, a judge or a politician will step down from office for reasons that are sealed, yet continue to practice law. Yet, these deals are offered selectively, to some and not to others.

77.     Plaintiff claims that every litigant should be afforded the same protections of the law and the Constitution, justice without delay, and to be assured that they are able to receive the same protections under the law, and to be the subject of a disciplinary action, based on the same rules that are afforded to those who are part of the court system. In attorney discipline cases, all attorneys must be treated equally, whether they are in private practice, municipal attorneys, elected officials and/or judges. Every attorney needs to work and make a living for themselves and their families and therefore no attorney should be above the law. Harm in disciplinary cases hurts not only the attorney respondent but the family of that attorney as well.

78.     Judge DiFiore, as Chief Administrator of the New York State Court System, is responsible for ensuring that litigants, including attorneys and judges, are treated fairly and equally; that the rules that exist are followed correctly and fairly; that employees of the court

system do not utilize secret, made-up or hidden rules; and that each person is treated as a person and that there shall be no actions taken to harm a person, attorney or judge under her direction and supervision. As the Chief Administrator, Judge DiFiore is also responsible to ensure that cases are managed and heard fairly and promptly, and for responding to and resolving particular issues that are brought to her attention, as Chief Judge, and not disregarding issues that are required to be resolved that include fairness, promptness and potential damages. By failing to address the issues brought to the attention of Judge DiFiore by Plaintiff, Judge DiFiore permitted her employees to continue a conspiracy of retaliation and delay against Plaintiff in this matter. Judge DiFiore has first-hand knowledge that damage is done to the family of the party that is the subject of accusations beyond the damage that is done to the party. In her telephone conversation with an accuser of her husband in the matter of *Selim Zherka and The Westchester Guardian v. Janet DiFiore and the County of Westchester*, Judge DiFiore stated to her husband's accuser in a telephone conversation:

> Sam: Hello. Hi, this is Sam Zherka.
> Judge DiFiore: Yes.
> Sam: I just picked up the newspaper. Can you tell me what article and what part of the article you are talking about?
> Judge DiFiore: Judith Kay being out of touch. She read the part in the article and I read it too. Look, what you did is personal! You don't go after family. That is a no no. My husband is one of the most respected attorneys in the country. He knows every US Supreme Court Justice on a first name basis, and has their direct lines. He is in front of these people all the time. He is well regarded and respected. What you did is not right.
> Sam: Look, I didn't do anything! I told you I don't write for the Guardian. Rich Blassberg wrote that article.
> Judge DiFiore: It's your newspaper. Don't ever mention that man's name to me. I fucken hate him. He is going to get you in a lot of trouble. If I saw him laying in the street bleeding to death I wouldn't help him. I hate that man. I fucken hate him! You should find another writer. He's going to cause a lot of problems for you. No one in this county likes him.
> Sam: Look, I'm not a bullshitter, I'm a straight guy. If it's black, I say it's black. If it's white, I say it's white. I know you are very good friends with Domenic Procopio. He has told me that in the past. I'm an old fashioned guy. I don't bother anyone. And I don't take anyone's bullshit either.
> Judge DiFiore: I'm not calling as the DA. I'm calling as a person who is angry at what was written about a member of her family. I come from a good old fashioned family too. I have kids, and I don't want my kids reading these lies about their father. I'm telling you, don't make it personal! You can write about my office, criticize the job my office is doing, but don't make it personal. I know how to play the game! How would you like it if someone came after your family?

79.     In *Zherka*, Judge DiFiore claimed that she acted in her official capacity when conversations took place and that she was protected by qualified immunity. *Zherka* accused Judge DiFiore of a fraudulent, false, perjurious and unethical representation when she claimed that she was acting in an official capacity. However, one thing is clear-that Judge DiFiore, claiming to act in her official capacity, was not accused by any tribunal of unethical conduct nor any other sanctionable act although the facts of her conduct would subject another to scrutiny.

80.     Judge DiFiore was also accused of unethical conduct more recently when a matrimonial litigant in a trial court witnessed her having dinner with her estranged husband, her adversary, during the case. It was Judge DiFiore's explanation that she was a long time friend with her dinner companion. Defendant DiFiore was not subjected to scrutiny for her actions yet those actions would subject another to scrutiny by a tribunal.

81.     An example has been set in other matters with other Judges in the State. For instance, Justices are permitted to resign from their seats rather than face sanctions by a tribunal regarding their unethical or sanctionable conduct.

82.     Justices in the Defendant Appellate Division discuss matters behind closed doors regarding the sanctions to be applied to grievance respondents and thus the orders of the Defendant Appellate Division regarding grievance sanctions can be influenced by off- the-record conversations.

83.     Plaintiff seeks to be treated similarly to others in the court system in New York. The mere fact that an attorney is in an elected or appointed position should not give that person the ability to be above the law.

### RETALIATION BASED ON THE NOTICE OF CLAIM IN THIS CASE

84.     Plaintiff filed a notice of claim in the instant matter to preserve state claims. Since the filing of that claim, a requirement under the law, the Defendants have deliberately delayed and prolonged the reinstatement of the Plaintiff as retaliation for the filing of the notice.

### DUE PROCESS VIOLATIONS AND DAMAGES

85.     Plaintiff has been denied the most basic due process rights, the right to notice of the rules and an opportunity to be heard. Allowing one party to know the rules and not the other party has

violated Plaintiff's right to notice. Restricting the ability of Plaintiff to access his transcript, to have the opportunity to provide live witness testimony and to have the Defendant Appellate Division delegate to the Defendant Grievance Committee full and absolute decision making over his matter and ultimately his reinstatement violates Plaintiff's due process rights and has damaged the Plaintiff.

86.     Due process rules are meant to protect persons not from the deprivation, but from the mistaken or unjustified deprivation of life, liberty, or property. Plaintiff has alleged herein the elements of due process that enabled the Defendants to deprive Plaintiff of protected interests. Due process requires an opportunity for fair confrontation and cross-examination at the very least.

87.     The Fourteenth Amendment requires the providing of due process to a person when an interest in one's "life, liberty or property" is threatened.  Section 1983 holds state and local government officials liable for money damages if they have violated constitutional rights.

88.     The Constitution holds that "All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and the State wherein they reside. No State shall make or enforce any law, which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

89.     Plaintiff claims that the laws that have been applied to him have not been even-handed and that he has been subjected to the arbitrary exercise of government power.  In civil matters, however, a balancing test is used that evaluates the government's chosen procedure with respect to the private interest affected, the risk of erroneous deprivation of that interest under the chosen procedure, and the government interest at stake. Plaintiff submits herein that the government interest in preventing him from practicing law for years is an interest based on retaliation and that Plaintiff's right to further his liberty interest is more compelling. While Plaintiff has waited years for his reinstatement, other citizens are protected even for their continued possession of a driver's license, which may also be essential to one's livelihood.

## COUNT I- VIOLATION OF DUE PROCESS AND CONSTITUTIONAL RIGHTS

90.    Plaintiff now re-alleges each and every allegation as set forth above, and hereby incorporates same by reference, as if all were set forth fully herein.

91.    42 U.S.C. § 1983 authorizes claims against government officials in their individual capacity for compensatory and punitive damages.

92.    The New York State Attorney Grievance laws, rules, statutes and regulations are hidden from the public, and in particular, attorneys who are subject to the grievance process. Some rules are available, but those rules are subject to interpretation by the Defendants Appellate Division and Grievance Committee based on their particular need. In essence, the rules that are available are so vague that an attorney subjected to punishment and sanction by the Defendants is unable to provide a proper defense. The Court deliberately seals cases so that interpretations of the limited rules that are available can be utilized by the Defendant Grievance Committee, but not by the prosecuted attorney. The rules are only available in privately authored summaries, and not by the court, as a reference for grievance practitioners. Rules are made up so that the prosecuted attorney cannot prepare for the modified rules that contain no support nor interpretation.

93.    The practices and policies alleged herein violate a fundamental principle of liberty and justice which are the rights of the Plaintiff.

94.    The Defendants intentionally refused to accept the dismissal of the charges pursuant to established rules by the Nassau County Bar Association as part of a pattern and agreement by the Defendants to violate the Plaintiff's due process rights.

95.    Failing to establish procedural rules that violate the Plaintiff's due process procedural rights, including the preclusion of witnesses, the refusing of requests for transcripts, the intentional avoidance of time period limitations and the failure to establish notice requirements for adverse parties who are found to be unable to testify due to health and death, and the lack of rules for identifying who is a complainant and therefore competent to give testimony are all part of the intentional actions of the Defendants that have damaged Plaintiff.

## COUNT II- STATE CLAIM FOR DEPRIVATION OF STATE CONSTITUTIONAL RIGHTS AND PRIVILEGES

96.     Plaintiff now re-alleges each and every allegation as set forth above, and hereby incorporates same by reference, as if all were set forth fully herein.

97.     Plaintiff claims that the Defendants are liable to Plaintiff for violating Plaintiff's rights and depriving him of rights, privileges and immunities secured by the Constitution and laws and causing Plaintiff damage.

## COUNT III- TORTIOUS INTERFERENCE WITH PROPECTIVE BUSINESS RELATIONS CLAIM

98.     Plaintiff re-alleges each and every allegation as set forth above, and hereby incorporates same by reference, as if all were set forth fully herein.

99.     Plaintiff claims that the Defendants are liable to Plaintiff for tortious interference with prospective economic relations, which includes conduct engaged in by the Defendants for the sole purpose of inflicting intentional harm that interferes with prospective contracts or other nonbinding economic relations unlawfully and maliciously. The Defendants have committed intentional acts with the knowledge that their acts would wrongfully prevent Plaintiff from engaging in his licensed occupation as an attorney with prospective and identifiable contracts and clients. Defendants were aware of Plaintiff's actual prospective business relationships with third parties

100.    Plaintiff was prevented from continuing trials and litigation due to his continued suspension caused by the intentional acts of the Defendants and was therefore damaged. Plaintiff was also prevented from obtaining and earning fees due to the continued suspension period.

## RELIEF REQUESTED

101.    Wherefore, Plaintiff requests judgment against all named Defendants for the causes of action alleged herein as follows:

1. That all Defendants pay to Plaintiff all damages sustained by Plaintiff in consequence of Defendants' numerous violations of the United States and New York Constitutions, laws, rules and codes, according to the best available proof;

2. That all Defendants pay to Plaintiff treble damages according to the best available proof;

3. That Plaintiff have such other and further relief as this Court deems just and proper, under the full range of relevant circumstances which have occasioned the instant action;

4. That all Defendants pay to Plaintiff reasonable attorney fees; and

5. That Plaintiff has such other and further relief as this Court deems just and proper, under the full range of relevant circumstances which have occasioned the instant action.

## SUMMARY OF DAMAGES

Summary of Punitive Damages (3x):      $6,000,000.00

TOTAL DAMAGES (minimum):      $6,000,000.00

## JURY DEMAND

Plaintiff hereby demands trial by jury on all issues triable to a jury lawfully convened.

Dated:    December 8, 2019
          Mt. Sinai, New York

Respectfully submitted,

Raymond Negron, Esq.
234 North Country Road
Mt. Sinai, New York 11766
(631) 928-3244