UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
ELIOT FRED BLOOM,

                     Plaintiff,               **MEMORANDUM & ORDER**

-against-                                           19-CV-7115 (DRH)

NEW YORK STATE UNIFIED COURT SYSTEM;
NEW YORK STATE APPELLATE DIVISION,
SECOND DEPARTMENT; NEW YORK STATE
GRIEVANCE COMMITTEE FOR THE NINTH
AND TENTH JUDICIAL DISTRICTS; JANET
DIFIORE, in her official capacity as Chief Judge
of the State of New York and Chief Judicial
Officer of the Unified Court System; CATHERINE
SHERIDAN, as Staff Counsel to the NEW YORK
STATE GRIEVANCE COMMITTEE FOR THE
NINTH AND TENTH JUDICIAL DISTRICTS;
MICHAEL FUCHS, individually and as Staff
Counsel to the NEW YORK STATE GRIEVANCE
COMMITTEE FOR THE NINTH AND TENTH
JUDICIAL DISTRICTS; APRILANNE AGOSTINO,
as Chief Clerk of the NEW YORK STATE
APPELLATE DIVISION, SECOND DEPARTMENT;
RANDALL ENG, as Presiding Judge of the NEW
YORK STATE APPELLATE DIVISION, SECOND
DEPARTMENT,

                     Defendants.
----------------------------------------------------------------X

**APPEARANCES:**

**For Plaintiff:**
Raymond Negron, Esq.
234 North Country Road
Mt. Sinai, New York 11766

**For Defendants**
Letitia James
Attorney General of the State of New York
300 Motor Parkway, Suite 230

Hauppauge, New York 11788
By:     Patricia M. Hingerton, Assistant Attorney General

**HURLEY, Senior District Judge:**

Plaintiff Eliot Fred Bloom ("Plaintiff"), an attorney, commenced this action against the New York State Unified Court System (the "UCS"), the New York State Appellate Division, Second Department (the "Appellate Division"), the New York State Grievance Committees for the Ninth and Tenth Judicial Districts (the "Grievance Committee"),[1] Janet DiFiore, in her official capacity as Chief Judge of the State of New York and Chief Judicial Officer of the UCS ("Chief Judge DiFiore"), Catherine Sheridan, as Staff Counsel to the Grievance Committee ("Sheridan"), Michael Fuchs, individually and as Staff Counsel to the Grievance Committee ("Fuchs"); Aprilanne Agostino, as Chief Clerk of the Appellate Division ("Agostino"); Randall Eng, as the former Presiding Justice of the Appellate Division ("Justice Eng") (collectively, "Defendants"), seeking damages for alleged violations of his constitutional rights under the federal and New York State constitutions and for tortious interference with his prospective economic relations. Presently before the Court is Defendants' motion to dismiss the Complaint. (ECF 19). For the reasons set forth below, Defendants' motion is GRANTED in its entirety.

---

[1]     Though the captioned defendants include the New York State Grievance Committees for the Ninth and Tenth Judicial Districts, Plaintiff's Complaint defines the "Grievance Committee" defendants to include the Eleventh Judicial District's Grievance Committee and to exclude the Ninth's. (Compl. ¶ 17 (ECF 1)). This distinction has no bearing on the Court's analysis. *See* Sections II.a & III *infra.*

## BACKGROUND

The following facts are taken from the Complaint and other materials properly considered on a motion to dismiss.[2]

Plaintiff was admitted to the New York State bar on September 24, 1986. A myriad of disciplinary actions for professional misconduct checker his practice of law. (*See, e.g.*, *In re Bloom* (*Bloom III*), 114 N.Y.S.3d 471, 478 (N.Y. App. Div. 2019) (cataloguing his "extensive disciplinary history"); *In re Bloom* (*Bloom II*), 37 N.Y.S.3d 343, 348 (N.Y. App. Div. 2016) (same); *In re Bloom* (*Bloom I*), 949 N.Y.S.2d 136, 138–39 (N.Y. App. Div. 2012) (same)).[3] The Court begins with the six-month suspension of Plaintiff's law license.

A former client's complaint to the bar in 2014 led Defendant Grievance Committee to investigate and prosecute Plaintiff for engaging in an undisclosed

---

[2] In considering a motion to dismiss pursuant to Rule 12(b)(6), a court is generally limited to the complaint and documents attached thereto. *See* Fed. R. Civ. P. 12(d); *Nakahata v. N.Y.-Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192, 202 (2d Cir. 2013). A court "'may also consider matters of which judicial notice may be taken.'" *Apotex Inc. v. Acorda Therapeutics, Inc.*, 823 F.3d 51, 60 (2d Cir. 2016) (quoting *Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 425 (2d Cir. 2008)); *see Bristol v. Nassau County*, 2016 WL 2760339 (E.D.N.Y. May 12, 2016) ("On a motion to dismiss, consideration is limited to the factual allegations in plaintiff's amended complaint, which are accepted as true, to documents attached to the complaint as an exhibit or incorporated in it by reference, to matters of which judicial notice may be taken, or to documents either in plaintiff's possession or of which plaintiff had knowledge and relied on in bringing suit." (internal quotation marks omitted)).

[3] Plaintiff does not dispute the Court's consideration of the three *In re Bloom* decisions (all relating to his professional misconduct), nor does he dispute any of the other materials Defendants attach to their Motion to Dismiss. *See* Pl. Opp. The Court, however, chooses not to rely on the three cases' recitation of facts nor on Defendants' other materials. Instead, the Court charitably styles the facts to align with Plaintiff's understanding, as doing so still leads to dismissal.

conflicted representation. (Compl. ¶ 5.). Shortly before a hearing on the matter, Plaintiff learned that Defendant Fuchs, who led the prosecution, misstated the source of a certain document the prosecution sought to introduce into evidence. (*Id.* ¶¶ 29, 35.). In response, Plaintiff filed a separate grievance complaint against Fuchs, which allegedly planted the seed of retaliation in the minds of all Defendants. (*See id.* ¶¶ 7, 10, 29, 30). At the hearing on Plaintiff's misconduct, Fuchs offered the document into evidence, and the special referee upheld two of three charges against Plaintiff. (*See id.* ¶ 35). On September 21, 2016, Defendant Appellate Division, with Defendant Justice Eng presiding, confirmed the charges against Plaintiff and suspended Plaintiff from the practice of law for six months, commencing one month later. (*See id.* ¶¶ 5, 63).

Plaintiff sought reinstatement to the bar after his suspension lapsed. (*See id.* ¶¶ 46–62). But Defendants never calendared his reinstatement motion; they allegedly "lost" his motion papers. (*Id.* ¶ 46). Plaintiff then began a letter campaign seeking intervention from Defendants Chief Judge DiFiore, Justice Eng, Agostino, and Appellate Division. (*Id.* ¶¶ 46, 48, 52–53, 78). Defendants nevertheless failed to intercede. (*Id.* ¶¶ 53, 54, 58). Instead, Defendants held their decision on Plaintiff's reinstatement in abeyance, pending resolution of other misconduct complaints against him. (*See id.* ¶¶ 48, 54, 58).

One such pending complaint against Plaintiff was the so-called "Wegner Complaint." (*See id.* ¶¶ 37–50). The Wegner Complaint, filed by a different former client's daughter, stemmed from Plaintiff's conduct at and following a trial in 2014.

(*Id.* ¶ 38). The Nassau County Bar Association's Grievance Committee, who first handled the Wegner Complaint, dismissed the case with a letter of advisement in 2015. (*Id.* ¶¶ 39–40). But in March 2016, Defendant Sheridan advised Plaintiff that the Wegner Complaint was held in abeyance. (*Id.* ¶ 43). Months later, after the Appellate Division had issued its six-month suspension on the conflict-of-interest matter, Defendants re-opened the Wegner Complaint. (*Id.* ¶¶ 39, 42). Continuing his letter campaign, Plaintiff asked Defendants to timely resolve the Wegner Complaint, to recuse themselves, to transfer the matter to another department, and to send him a copy of the transcript of his testimony in the Wegner matter. (*Id.* ¶¶ 43, 47, 65–69). Defendants denied each request. (*Id.*). During this time, Plaintiff's law license remained suspended. (*Id.* ¶¶ 5, 50, 62).

By the time Defendants held a hearing on the Wegner Complaint, Mr. Wegner had passed away – thereby denying Plaintiff the opportunity to present him, in-person, as live witness. (*Id.* ¶ 45, 49). Plaintiff was also denied the opportunity to present lie detector results at the hearing. (*Id.* ¶ 70). In December 2019, the Appellate Division concluded the matter by suspending Plaintiff from the practice of law for three years. (*Id.* ¶¶ 5, 50, 62).

Plaintiff filed his Complaint in this action on December 19, 2019: one day after the Appellate Division issued its three-year suspension. Plaintiff complains that Defendants illegally retaliated against him by extending his suspension from six months to three years through their intentional delay, unfair hearing, and unequal treatment. (*See, e.g., id.* ¶¶ 62, 70–72, 76–83). He claims money damages

against each Defendant for: (1) violations of his due process rights under the Constitution of the United States of America, pursuant to 42 U.S.C. § 1983; (2) violations of his due process rights under the Constitution of the State of New York;[4] and (3) a tortious interference with prospective business relations claim under New York State law.

## DISCUSSION

Defendants move to dismiss based on three principal arguments: (1) Plaintiff's claims are barred by the doctrines of Eleventh Amendment immunity, absolute judicial immunity, and absolute quasi-judicial immunity; (2) the *Rooker-Feldman* doctrine precludes federal district court jurisdiction; and (3) Plaintiff's three counts fail to state claims upon which relief can be granted. As the first two suffice to defeat Plaintiff's case, the Court does not reach the third argument.

## I. Motion to Dismiss Standard

In deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court should "draw all reasonable inferences in Plaintiff['s] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks omitted). The plausibility standard is guided by two principles. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

---

[4] Plaintiff fails to cite a legal basis for his private right of action for violations of the New York State Constitution. And he cannot – none exists where there is an alternative remedy under § 1983. *Allen v. Antal*, 665 Fed. App'x 9, 13 (2d Cir. 2016).

(citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)); *accord Harris v. Mills*, 572 F.3d 66, 71–72 (2d Cir. 2009).

First, the principle that a court must accept all allegations as true is inapplicable to legal conclusions. Thus, "threadbare recitals of the elements of a cause of action supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Although "legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679. A plaintiff must provide facts sufficient to allow each named defendant to have a fair understanding of what the plaintiff is complaining about and to know whether there is a legal basis for recovery. *See Twombly*, 550 U.S. at 555.

Second, only complaints that state a "plausible claim for relief" can survive a motion to dismiss. *Iqbal,* 556 U.S. at 679. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but asks for more than a sheer possibility that defendant acted unlawfully. Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line' between possibility and plausibility of 'entitlement to relief.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556-57) (internal citations omitted); *see In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007). Determining whether a complaint plausibly states a claim for relief is "a context specific task that requires the

reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679; *accord Harris*, 572 F.3d at 72.

## II. Immunity from Suit

### a. Eleventh Amendment Sovereign Immunity

"Absent consent to suit in federal court, or express statutory waiver, the Eleventh Amendment bars a suit in federal court by a citizen of a state against that state or one of its agencies." *Pratesi v. N.Y. State Unified Ct. Sys.*, 2010 WL 502950, at *5 (E.D.N.Y. Feb. 9, 2010) (internal quotations omitted). The Eleventh Amendment immunity "extends beyond the states themselves to 'state agents and state instrumentalities' that are, effectively, arms of a state." *Woods v. Roundout Valley Cent. Sch. Dist. Bd. of Educ.*, 466 F.3d 232, 236 (2d. Cir. 2006) (quoting *Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 429 (1997)). It also extends to state officials sued in their official capacities. *Davis v. New York*, 316 F.3d 93, 101–02 (2d Cir. 2002).

Plaintiff argues that "there is no blanket immunity" available to Defendants, citing *Harlow v. Fitzgerald*, 457 U.S. 800 (1982), *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), and *Monroe v. Pape*, 365 U.S. 167 (1961) in support. *See* Pl. Opp. at 6 [ECF 19-3]. Plaintiff misunderstands the law; his cited caselaw addresses qualified immunity, which is different from the immunity recognized by the Eleventh Amendment. *See, e.g.*, *Kentucky v. Graham*, 473 U.S. 159, 165–67 (1985).

"New York State has not waived its immunity nor has Congress abrogated it." *Li v. Lorenzo*, 712 Fed. App'x 21, 22 (2d Cir. 2017) (citing *Trotman v. Palisades Interstate Park Comm'n*, 557 F.2d 35, 38–40 (2d Cir. 1977) and *Dube v. State Univ. of N.Y.*, 900 F.2d 587, 594 (2d Cir. 1990)). The Eleventh Amendment thereby shields it, and its arms, from liability. *Id.* "[T]he New York State Unified Court System is unquestionably an arm of the state" and therefore receives Eleventh Amendment immunity. *Gollomp v. Spitzer*, 568 F.3d 355, 368 (2d Cir. 2009). For the same reason, the Appellate Division and Grievance Committee defendants similarly "enjoy sovereign immunity under the Eleventh Amendment." *See Napolitano v. Saltzman*, 315 Fed. App'x 351, 351 (2d Cir. 2009) (citing *Kentucky*, 463 U.S. at 166–67). As such, the claims against the UCS, Appellate Division, and Grievance Committee defendants are dismissed. To the extent Plaintiff sues Chief Judge DiFiore, Sheridan, Fuchs, Agostino, and Justice Eng in their official capacities, such claims are likewise dismissed. *See Davis*, 316 F.3d at 101–02.

    **b.**    **The Absolute Judicial and Quasi-Judicial Immunities**

The Court's analysis does not end there, as Plaintiff sues Defendant Fuchs in his individual capacity. Further, the Courts generously understands Plaintiff to argue that, because he pleads that every Defendant allegedly acted "outside [their] official authority," he thereby sues them in their individual capacities and they are

not entitled to any immunity.[5] The Court now turns to the absolute judicial and quasi-judicial immunities. Pl. Opp. at 7.

"Immunity, either absolute or qualified, is a *personal* defense that is available only when officials are sued in their individual capacities." *Almonte v. City of Long Beach*, 478 F.3d 100, 106 (2d Cir. 2007) (emphasis in original). Because the UCS, Appellate Division, and Grievance Committee defendants are not "persons" amenable to suit under any of Plaintiffs theories, the Court dismisses all claims against them in their personal or individual capacities, even before the immunity analysis. *See, e.g.*, *Brown v. N.Y. State Unified Ct. Sys.*, 2006 WL 8450968, at *2 (E.D.N.Y. Oct. 13, 2006) (UCS), *aff'd* 261 Fed. App'x 307, 307–08 (2d Cir. 2008); *Zuckerman v. App. Div., Second Dep't*, 421 F.2d 624, 626 (2d Cir. 1970) (Appellate Division); *Sassower v. Mangano*, 927 F. Supp. 113, 121 (S.D.N.Y. 1996) (Grievance Committee), *aff'd* 122 F.3d 1057 (2d Cir. 1997).

### 1. Absolute Judicial Immunity

Judges have absolute immunity from suits arising from judicial acts performed in their judicial capacities. *Mireless v. Waco*, 502 U.S. 9, 12 (1991). "Whether an act by a judge is a 'judicial' one relate[s] to the nature of the act itself, *i.e.*, whether it is a function normally performed by a judge, and to the expectations of the parties, *i.e.*, whether they dealt with the judge in his judicial capacity." *Id.* (quoting *Stump v. Sparkman*, 435 U.S. 349, 360 (1978)). A judge's action "'in

---

[5] The caption expressly names Chief Judge DiFiore only "in her official capacity." The caption is silent as to all other Defendants, save for Fuchs, who is sued "individually and as Staff Counsel."

error, . . . done maliciously, or . . . in excess of [the judge's] authority' does not undermine [the judge's] claim to absolute immunity so long as it did not fall clearly outside all official authority." *Finn v. Anderson*, 592 Fed. App'x 16, 19 (2d Cir. 2014) (quoting *Stump*, 435 U.S. at 356).

Plaintiff's claims against Chief Judge DiFiore and Justice Eng arise from their actions, and inactions, related to the disciplinary processes which culminated in his suspensions. Chief Judge DiFiore allegedly failed to supervise the entire disciplinary process and failed to intercede on Plaintiff's behalf. *See, e.g.*, Compl. ¶¶ 10, 46, 53. Justice Eng allegedly delayed too long in deciding Plaintiff's reinstatement motion and, *inter alia*, rejected Plaintiff's letter requests. *E.g., id.* ¶¶ 46, 54, 75. These acts are unquestionably within the ambit of their judicial duties. *See* 22 N.Y. Comp. Codes R. & Regs. tit. 22, § 100.3(D)(3) ("Acts of a judge in the discharge of disciplinary responsibilities are part of a judge's judicial duties"). They both are entitled to absolute judicial immunity, and any claims against them in their individual capacities are dismissed.

### 2. Absolute Quasi-Judicial Immunity

Those "perform[ing] functions closely associated with the judicial process" receive absolute quasi-judicial immunity. *Cleavinger v. Saxner*, 474 U.S. 193, 200 (1985). For example, court clerks receive quasi-judicial immunity because their ordinary responsibilities are judicial in nature. *Peker v. Steglich*, 324 Fed. App'x 38, 39–40 (2d Cir. 2009); *see also Weiner v. State*, 710 N.Y.S.2d 325, 327 (N.Y. App. Div. 2000) ("The normal work of a court clerk who participates in the processing of legal

proceedings is generally viewed as 'quasi-judicial,' thereby cloaking the clerk with judicial immunity."). Likewise, "[i]n the investigation of [disciplinary] complaints and in the conduct of such proceedings, . . . , the bar association's Grievance Committee acts as a quasi-judicial body," thus granting members of a Grievance Committee absolute quasi-judicial immunity. *See Anonymous v. Ass'n of the Bar of N.Y.*, 515 F.2d 427, 433–34 (2d Cir. 1975). Moreover, the Second Circuit has "consistently extended quasi-judicial immunity to attorney disciplinary committees." *Neroni v. Coccoma*, 591 Fed. App'x 28, 29–30 (2d Cir. 2015) (citing *Ass'n of the Bar of N.Y.*, 515 F.2d at 433).

Plaintiff's claims against Agostino target her actions performed as Clerk of the Court. She allegedly failed to calendar a hearing on his reinstatement motion (thereby delaying its determination), "lost" his reinstatement motion, "issued an order" holding Plaintiff's motion in abeyance, and ignored Plaintiff's letter requests. *E.g.*, Compl. ¶¶ 46, 51, 54, 67, 75. Agostino's conduct falls within the scope of her judicial duties as Clerk of the Court; she therefore receives absolute quasi-judicial immunity. *Cf. Rodriguez v. Weprin*, 116 F.3d 62, 67 (2d Cir. 1997) ("[E]ven if viewed as performing an administrative task, the court clerks are entitled to immunity for harms allegedly related to the delay in scheduling appellant's appeal."). All claims against Agostino in her individual capacity are dismissed.

Plaintiff's allegations toward Sheridan and Fuchs speak to their roles as staff counsel to the Grievance Committee. Sheridan allegedly prosecuted Plaintiff notwithstanding the Nassau County Bar Association's contrary determination,

delayed resolution of the prosecutions and his reinstatement, and rebuffed his requests for a copy of his examination under oath. *E.g.*, *id.* ¶¶ 39, 45, 61, 65–69. Fuchs allegedly did the same – in addition to misstating the source of a document later admitted into evidence at a hearing on Plaintiff's misconduct. *E.g.*, *id.* ¶¶ 35, 42, 45, 61. In other words, Sheridan and Fuchs saw that Plaintiff was properly investigated and prosecuted for his charged professional misconduct. They therefore enjoy "absolute immunity for [their] actions as counsel to the Grievance Committee, which are quasi-public adjudicatory [or] prosecutorial in nature." *See Napolitano*, 315 Fed. App'x at 351–52 (citing *Barbara v. N.Y. Stock Exch., Inc.*, 99 F.3d 49, 58 (2d Cir. 1996)). The Court dismisses any claims against Sheridan and Fuchs in their individual capacities.

### III.   The *Rooker-Feldman* Doctrine

Plaintiff's suit fails on another basis: it cannot be heard in federal district court. "Under the *Rooker-Feldman* doctrine, federal district courts lack jurisdiction over cases that essentially amount to appeals of state court judgments." *Vossbrinck v. Accredited Home Lenders, Inc.*, 773 F.3d 423, 426 (2d Cir. 2014). The *Rooker-Feldman* doctrine commands dismissal if: "(1) the federal-court plaintiff lost in state court; (2) the plaintiff complains of injuries caused by a state court judgment; (3) the plaintiff invites review and rejection of that judgment; and (4) the state judgment was rendered before the district court proceedings commenced." *Id.* at 426. Here, (1) the Appellate Division rendered Plaintiff a "state-court loser" each time it confirmed the special referees' charges and suspended Plaintiff; (2) Plaintiff's

injuries trace to those suspensions and the lead up thereto; (3) a "challenge to a state judge's exercise of jurisdiction to suspend an attorney from practice is, in effect, a request to review the state court's judgment suspending the attorney from practice," *Abraham v. Appellate Div. of Supreme Court*, 311 Fed. App'x 474, 475 (2d Cir. 2009) (citing *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005)); and (4) the state judgment issued a day prior to Plaintiff filing his Complaint in this action.

Plaintiff argues the *Rooker-Feldman* doctrine does not apply because his suit "is not to review a state court determination, but for illegal acts that caused damages to the Plaintiff." Pl. Opp. at 8. This is a distinction without a difference: Plaintiff mimics claims whose dismissals are routinely affirmed by the Second Circuit. *E.g.*, *Weissbrod v. Gonzalez*, 2013 WL 12084506 (S.D.N.Y. May 2, 2013), *aff'd* 576 Fed. App'x 18 (2d Cir. 2014); *Abraham v. Appellate Div. of Supreme Court*, 473 F. Supp. 2d 550 (S.D.N.Y. 2007), *aff'd* 311 Fed. App'x 474 (2d Cir. 2009); *Sassower v. Mangano*, 927 F. Supp. 113 (S.D.N.Y. 1996), *aff'd* 122 F.3d 1057 (2d Cir. 1997). All three of the plaintiffs in the just cited cases prayed for 42 U.S.C. § 1983 damages caused by suspensions of their law licenses and the proceedings leading up to them. *Weissbrod*, 2013 WL 12084506, at *1 ("Plaintiff, an attorney who, as of January 1, 2013, has been suspended for six months from the practice of law in the state of New York, brings this action alleging violation of her rights by Defendants during the course of the proceedings that led to her suspension. . . . Plaintiff also seeks unspecified monetary damages."); *Abraham*, 473 F. Supp. 2d at

552, 558 ("This case arises from two court sanctions against Plaintiff which, coupled with several other disciplinary violations, resulted in the suspension of his license to practice law. . . . [P]laintiff seeks money damages for an alleged violation of § 1983."); *Sassower*, 927 F. Supp. at 115 ("Pursuant to 42 U.S.C. § 1983, plaintiff . . . brings the instant action . . . arising out of state disciplinary proceedings which resulted in the suspension of her license to practice law."). None avoided the *Rooker-Feldman* bar. Neither can Plaintiff.

## CONCLUSION

Defendants' motion to dismiss is granted in its entirety. The Clerk of Court is directed to enter judgment and close the case.

**SO ORDERED.**

Dated: Central Islip, New York　　　　/s/ Denis R. Hurley
　　　　October 16, 2020　　　　　　　Denis R. Hurley
　　　　　　　　　　　　　　　　　　United States District Judge